```
            IN THE UNITED STATES BANKRUPTCY COURT
                 EASTERN DISTRICT OF ARKANSAS
                        EASTERN DIVISION


IN RE: TOMMY F. ROBINSON,                CASE NO. 2:05-bk-13915M
IN RE: CAROLYN B. ROBINSON               (CHAPTER 7)
          Debtors.                       (Jointly Administered)


WILDLIFE FARMS II, LLC, ET AL                          PLAINTIFF

VS.                     AP NO. 2:06-AP-01111

TOMMY F. ROBINSON AND
CAROLYN B. ROBINSON                                    DEFENDANTS
```

                        MEMORANDUM OPINION

On March 25, 2005, involuntary petitions for relief under the provisions of Chapter 7 of the United States Bankruptcy Code were filed against Tommy F. Robinson (Tommy Robinson) in Case No. 2:05-bk-13915 and his wife, Carolyn B. Robinson (Carolyn Robinson), in Case No. 2:05-bk-13916.  The cases were combined for a contested trial held on September 28, 2005.  At the conclusion of the hearing both Tommy Robinson and Carolyn Robinson (Debtors) were adjudicated Debtors under the provisions of Chapter 7.  No appeal from the Court's order was taken.  On December 20, 2005, the Court ordered that the cases be jointly administered and all pleadings filed in the Tommy Robinson case, Case No. 2:05-bk-13915. (Plaintiff's Ex. 7.)  Frederick S. Wetzel, III, was duly appointed the Chapter 7 Trustee for the jointly administered case.

On March 23, 2006, Wildlife Farms II, LLC, Bill Thompson, and Boyd Rothwell filed a complaint against the Debtors objecting to the Debtors' discharge under the provision of 11 U.S.C. § 727 and a complaint to determine the dischargeability of the debts owed to Plaintiffs under the provision of 11 U.S.C. § 523. The Debtors filed timely answers objecting to the allegations.  At the trial, the Plaintiffs dismissed all complaints arising under 11 U.S.C. § 523 and proceeded under the provisions of 11 U.S.C. § 727(a)(2),(3),(4), and (5).  (TR. at 13 and Plaintiff's Ex. 10.)

Trial on the merits was conducted at Helena-West Helena, Arkansas on January 10, 2007, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) and the Court has jurisdiction to enter a final judgment in the case.  The following shall constitute the Court's findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

I.

TOMMY ROBINSON

A.   The Lawsuit

The schedules filed by Tommy Robinson were filed on October 21, 2005.  (Plaintiff's Ex. 5.)  His schedules list assets valued at $758,437.05 and liabilities of $3,618,014.58.

2

(Plaintiff's Ex. 5.)  Schedule B of Tommy Robinson's schedules, which requires a debtor to list all personal property assets, does not list any cause of action owned by Tommy Robinson on the date the petition was filed.  (Plaintiff's Ex. 5.)  Notwithstanding, Tommy Robinson and others filed a complaint in the Circuit Court of Monroe County, Arkansas (Case No. CV-2005-88-1) on July 27, 2005, against Bill Thompson and others alleging, among other things, a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), against the named defendants for conduct which allegedly occurred pre-petition.  (Plaintiff's Ex. 12.)  The complaint, which is fifty-six pages long, alleges that the plaintiffs in that cause of action have been damaged and are entitled to judgment for $25,815,000.00.  The amount is unapportioned as between the plaintiffs.  The complaint was filed after the date the involuntary petition was filed.  The RICO case was pending when Tommy Robinson filed his required schedules on October 21, 2005.

The complaint was signed by Tommy Robinson, for himself, and as agent for his wife, his two sons, and the other business entities in which he was involved. (Plaintiff's Ex. 12.)  Tommy Robinson acknowledged that he authorized the filing of the lawsuit, but offered no explanation why the lawsuit was not listed as an unliquidated asset except to state that, "[t]here would have been no asset value there.  It hadn't been heard.

3

There was no money there." (TR. at 25.) When questioned further, Tommy Robinson responded that, "I don't know . . . my attorney filled out all of those schedules." (TR. at 27.)

    B.   The Vehicles

Tommy Robinson's schedules reflected that he owned three vehicles, a 2000 Dodge Van and two 2002 Chevy Trucks. (Plaintiff's Ex. 5.) Tommy Robinson stated that he drives a 2004 Dodge Ram 1500 truck, but there is no 2004 Dodge Ram Truck listed on his petition. He testified that the payments on the Dodge Ram truck were paid for out of a corporation he and his wife owned named Brinkley Truck & Tractor, but that his wife makes the payments now. (TR. at 28.) His Schedule J reflects that he was also paying $500.00 for a Dodge Durango. (Plaintiff's Ex. 5.) However, at trial he testified that the Dodge Durango was his wife's car and that she makes the payments on it. (TR. at 31.) Tommy Robinson also admitted that title to a wrecker was in his and his wife's name, which was not listed on his schedule.[1] (TR. at 50.) Titles to the vehicles were not introduced, so the record does not reflect who owns which vehicle. Tommy Robinson offered no explanation why he asserted in Schedule J that he made a $500.00 a month payment for the Dodge Durango, when he actually did not. The Court notes that adding the $500.00 car payment as

---

[1] Carolyn Robinson testified that the wrecker was in her and her son's names. The record is unclear if the Debtors are referring to one wrecker or two.

4

a monthly expense made Tommy Robinson's monthly expenses equal to his monthly income, to the penny.

    C.   Lot in Brinkley

Tommy Robinson's Schedule A which describes his interest in real property lists a half interest in property described as 304 Lookout Point, Hot Springs, Arkansas and 2401 North Highway 49, Brinkley, Arkansas. (Plaintiff's Ex. 5.) His schedules do not list a tract of land consisting of .46 acres of land in Brinkley, Arkansas, which was described as a vacant lot located next door to Tommy Robinson's son, Greg Robinson. (Plaintiff's Ex. 5 and 10.) Tommy Robinson testified that he purchased the property in August 1995 and that he intended to transfer title to the lot to his son, Greg Robinson, and thought he did. (TR. at 37.) He acknowledged receiving the tax bill and paying taxes as recently as 2005. (TR. at 34 and Plaintiff's Ex. 14.) He also acknowledged that he testified about the property in depositions in May of 2005. (TR. at 37-38.)

    D.   Accountants and Financial Statements

On his Statement of Financial Affairs, Tommy Robinson answered "none" to the following questions: 19(a), which asks for the names of all bookkeepers and accountants who within two years of the filing of the case kept any of his books and records; 19(b), which asks for a list of the name of any firm or individuals who prepared financial statements within the past two

5

years; and 19(d), which asks for a list of all financial institutions, creditors and other parties to whom a financial statement was given in the two years immediately preceding the commencement of the case. (Plaintiff's Ex. 5.)

All of the answers to question (19) were false. Steve Elledge acted as Tommy Robinson's accountant. (TR. at 39.) Tommy Robinson furnished financial statements for himself dated March 16, 2005, to the attorney for Community Bank, and he admitted that he furnished financial statements to other creditors such as Bancorp South. (TR. at 44.)

II.

CAROLYN ROBINSON

A. The Lawsuit

The schedules filed by Carolyn Robinson were filed on October 19, 2005. The schedules listed assets totaling $972,087.05 and liabilities of $3,358,915.13. (Plaintiff's Ex. 6.) Schedule B which requires a debtor to list all personal property assets does not list any cause of action which Carolyn Robinson owned on the date the petition was filed. (Plaintiff's Ex. 6.) Notwithstanding, Carolyn Robinson was a named plaintiff along with others in a pending civil action in the Circuit Court of Monroe County, Arkansas (Case No. CV-2005-88-1) filed on July 27, 2005, against Bill Thompson and others alleging, among other things, a violation of RICO for conduct which allegedly occurred

6

pre-petition.  (Plaintiff's Ex. 12.)  The complaint, which is fifty-six pages long, alleges that the plaintiffs in that cause of action have been damaged and are entitled to judgment for $25,815,000.00.  The amount is unapportioned as between the plaintiffs.  The complaint was filed after the date the involuntary petition was filed.  The RICO case was pending when Carolyn Robinson filed her required schedules on October 19, 2005.

The complaint was signed by Tommy Robinson, for himself, and as an agent for Carolyn Robinson.  (Plaintiff's Ex. 12.)  Upon questioning if she participated in the preparation of the complaint, Carolyn Robinson testified that, "I didn't directly have it done, no."  (TR. at 71.)  But she stated that she was aware it was filed, "by attorneys for us. . . ."  (TR. at 71.) She admitted the lawsuit was not scheduled on her petition.  (TR. at 73.)

B.   The Vehicles.

Carolyn Robinson's schedules reflected the following three vehicles: a 2004 Dodge Durango, a 2004 Dodge Pick Up, and a 2002 Dodge Ram.  (Plaintiff's Ex. 6.)  Carolyn Robinson testified that the Dodge Ram is used by her son, she drives the Dodge Durango, and the Dodge Pick Up is driven by her husband.  (TR. at 74.)  She testified that she and her son, Greg Robinson, own a wrecker that was not listed.  (TR. at 75.)  She said sometimes

the wrecker debt was paid for by Brinkley Truck & Tractor and sometimes she paid for it. (TR. at 75.)  When asked why payments were made in this fashion she said, "[t]hat's just, we, you know, that's just what we did.  You'll need to ask my husband about that."  (TR. at 76.)

       C.    Lot in Brinkley

Carolyn Robinson's Schedule A, which lists her interest in real property, lists a fee simple in property described as 304 Lookout Point, Hot Springs, Arkansas; a one-half interest in 2401 North Highway 49, Brinkley, Arkansas; and a fee simple interest in 1303 North Main Street, Brinkley, Arkansas.  (Plaintiff's Ex. 6.)  It does not list a tract of land consisting of .46 acres of land in Brinkley, Arkansas, which was described as a vacant lot located next door to Carolyn Robinson's son, Greg Robinson.  Carolyn Robinson admitted that she and her husband owned the lot and when shown copies of the 2005 tax bill which reflects the Debtors as owners of the lot, she stated that, "I don't - you know, my husband takes care of that.  I don't, you know - I don't see any of that."  (TR. at 76-77).

       D.    Accountants and Financial Statements

In response to questions on Carolyn Robinson's Statement of Financial Affairs, she indicated "none" to the following questions: 19(a), which asks for the names of all bookkeepers and accountants who within two years of the filing of the case kept

any of her books and records; question 19(b) which asks for a list of the name of any firm or individuals who prepared financial statements within the past two years; and 19(d), which asked for a list of all financial institutions, creditors and other parties to whom a financial statement was given in the two years immediately preceding the commencement of the case. (Plaintiff's Ex. 6.)

All of the answers to question (19) were false. Carolyn Robinson admitted that Steve Elledge prepared some tax returns for entities in which she was a part owner, including the liquor store which is owned 100% by Carolyn Robinson. (TR. at 79.) Carolyn Robinson repeatedly asserted that her husband "took care of all of that." She admitted signing a financial statement for the liquor store. (TR. at 82.) She also admitted that she thought she furnished financial statements to Bancorp South, but that again, "Tommy took care of that. You will have to ask him about that." (TR. at 86.)

Carolyn Robinson stated that she drew no income from the liquor store in 2004 or 2005. (TR. at 91.) However, the tax returns for the liquor store which is a corporation called "The Liquor Store of Brinkley, Inc." and owned 100% by the Debtor, Carolyn Robinson, reflect an asset described as loans to shareholders with a balance at the beginning of the tax year 2005 of $104,781.00 and a balance at the end of the tax year of

$125,563.00, indicating the corporation lent Carolyn Robinson $20,782.00 in the year 2005. (Plaintiff's Ex. 16 A.) The 2003 and 2004 tax returns show no loans to shareholders either at the beginning of the year or the at the end of the year. (Plaintiff's Ex. 16 B and C.)

Carolyn Robinson had no explanation for a total of $125,000.00 in loans to shareholders as reflected on the tax return and stated that she did not "recall" any of the loans taken from the liquor store in 2004 or 2005. (TR. at 95.)

### III.

### DISCUSSION

11 U.S.C. § 727(a)(4)(A) provides in relevant part that "the court shall grant the debtor a discharge unless . . . the debtor, knowingly and fraudulently in or in connection with the case . . . made a false oath or account."

To succeed under 11 U.S.C. § 727(a)(4)(A), it must be shown that (1) the Debtor made the statement under oath; (2) the statement was false; (3) the statement was made with fraudulent intent; (4) the debtor knew the statement was false; and (5) the statement related materially to the debtor's bankruptcy. Dupwe v. Massey (In re Massey), 2007 WL 1173630, *3 (Bankr. E.D. Ark. 2007)(citing Johnson v. Baldridge (In re Baldridge), 256 B.R. 284, 289(Bankr. E.D. Ark. 2000)).

The plaintiff has the burden of proving facts essential to an objection to discharge by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 288, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991). However, once a creditor has introduced evidence that the debtor committed any of the prohibited acts, the debtor has the burden of coming forward with the evidence to explain his conduct. Ramsay v. Jones (In re Jones), 175 B.R. 994, 997 (Bankr. E.D. Ark. 1994)(citing Jolles v. Freedman (In re Freedman), 693 F.2d 50, 51 (8th Cir. 1982)).

The Bankruptcy Code requires Debtors to fully complete the schedules and statements of affairs under oath. Statements made with reckless regard to the truth are regarded as intentionally false. Korte v. Internal Revenue Service (In re Korte), 262 B.R. 464 (B.A.P. 8th Cir. 2001)(citations ommitted); Bold City, Ltd. v. Radcliff (In re Radcliff), 141 B.R. 1015, 1021 (Bankr. E.D. Ark. 1992). Omissions from the schedules qualify as a false oath if they are made knowingly and with fraudulent intent. Capalak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000)(citing Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992)); Johnson v. Baldridge (In re Baldridge), 256 B.R. 284, 289 (Bankr. E.D. Ark. 2000); Ray v. Graham (In re Graham), 111 B.R. 801, 807 (Bankr. E.D. Ark. 1990). A debtor rarely admits fraudulent intent; therefore, the objecting party must rely on a combination of circumstantial evidence that suggests the necessary intent.

11

The debtor cannot then overcome that inference with an unsupported assertion of honest intent. Jacoway v. Mathis (In re Mathis), 258 B.R. 726, (Bankr. W.D. Ark. 2000)(citing In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987)).

The statement or omission is 'material' if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.  Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992); Capalak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000); Dupwe v. Massey In re Massey, 2007 WL 1173630, *4 (Bankr. E.D. Ark. 2007)(citations omitted).

A lawsuit is a chose in action and is property which must be scheduled, regardless of whether the claim has been liquidated. United States v. Whiting Pools, Inc., 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.E.2d 515 (1983), U.S. ex rel. Gebert v. Transport Administrative Services, 260 F.3d 909, 913 (8th Cir. 2001)(citing Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.), 816 F.2d 1222, 1225 (8th Cir. 1987)) (causes of action that belong to the debtor at the commencement of the case are included within the definition of property of the estate).

As can be seen from the discussion of the facts, both Debtors have made numerous misstatements of fact on their respective bankruptcy petitions by either misstating the facts or

by omitting answers to questions about their assets and financial affairs.  The Debtors made little effort to explain the omissions and false statements, and in some instances no effort to explain.  Tommy Robinson said that he forgot about the lot in Brinkley even though he received a tax bill as recently as 2005 with the lot clearly shown to be owned by himself and his wife, and he testified about it in 2005.  His other responses were generally that his attorney filled out the schedules.  It strains credibility to believe that Tommy Robinson forgot that he was a plaintiff in a 25 million dollar lawsuit when he filled out his schedules.

Carolyn Robinson, while not disputing the omissions and false statements generally referred to her husband, continually making the statement that "he took care of that."  The petitions were both signed under the penalty of perjury and each Debtor affirmed that they read the petition before they signed it.  (Plaintiff's Ex. 5 and 6.)

Carolyn Robinson's testimony that she had no knowledge of any withdrawals from the liquor store corporation is not credible in light of the tax returns which presumably were prepared from the records of her corporation and show loans to shareholders in 2005 of $125,563.00.

Given the number of false statements and omissions by both Debtors and the magnitude of the RICO claim that the Debtors were

13

asserting but omitted from the schedules, the evidence clearly establishes by the required preponderance that the false statements and omissions were made under oath knowingly, intentionally, and with fraudulent intent.[2] The false statements and omissions were material as they bore a relationship to the Debtors' estate and concern the discovery of assets, business dealings and the disposition of the Debtors' property. Therefore, the discharge of Tommy Robinson and Carolyn Robinson will be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

A separate judgment will be entered pursuant to Federal Rule of Bankruptcy Procedure 7052.

IT IS SO ORDERED.

_____
HON. JAMES G. MIXON
UNITED STATES BANKRUPTCY JUDGE

DATE: 05/17/07

cc: Sheila Campbell, Esq.
    Stuart Hankins, Esq.
    Tommy F. Robinson, Debtor
    Carolyn B. Robinson, Debtor

---

[2] The Debtors also filed amended schedules when their cases were consolidated. However, neither of the amended schedules has the RICO claim listed. Nor does either amended schedule address the other discrepancies discussed herein. (See Plaintiff's Ex. 8 and 9.)